UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANTHONY MEDINA, MICHAEL DOXEN, and
KEVEN SHORTELL,

                              Plaintiffs,

                  -vs-                                         07-CV-497-JTC

DAVID F. NAPOLI, et al.,

                              Defendants.

---

## BACKGROUND

In the amended complaint in this action, plaintiffs *pro se* Anthony Medina, Michael Doxen, and Keven Shortell sought declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 against several individuals employed by the New York State Department of Corrections and Community Supervision ("DOCCS"), based on events alleged to have occurred while plaintiffs were incarcerated at the Southport Correctional Facility ("Southport CF") maintained by DOCCS. In April 2010, following the expiration of the discovery deadline, defendants moved for summary judgment under Fed. R. Civ. P. 56 on several grounds, including failure to exhaust all available administrative remedies with respect to the claims in the complaint unique to the three remaining plaintiffs (*see* Dkt. No. 93-2). By decision and order entered on October 24, 2012 (Dkt. No. 121), this court granted the summary judgment motion dismissing the action in its entirety on the ground that plaintiffs had failed to fully exhaust the DOCCS inmate grievance and appeal procedures available under New York State prison regulations prior to seeking redress in federal court for violations of their constitutional rights based on the conduct of state prison officials, as

required under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e, and that the record did not support any judicially-recognized justification for excusing plaintiffs' failure to fully pursue those remedies. *Medina v. Napoli*, No. 07-CV-497-JTC, 2012 WL 5288713 (W.D.N.Y. Oct. 24, 2012). Final judgment was entered by the Clerk of the Court on October 26, 2012. Dkt. No. 124.

Plaintiff Anthony Medina immediately moved for reconsideration of the court's decision and order dismissing the complaint as it pertained to the claims alleged on his behalf, contending that the decision was issued prior to the time allowed for plaintiffs to submit a substantive response, as set forth in a briefing order entered on October 17, 2012 (*see* Dkt. No. 117),[1] with the result that the court overlooked the holding in *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), in which the Second Circuit outlined a three-part inquiry to be applied in cases where an inmate plaintiff seeks to avoid summary judgment on the ground of failure to adhere to the PLRA's exhaustion requirement. *See* Dkt. No. 124. By order entered December 12, 2012, this court denied the motion for reconsideration, upon "a straightforward reading" of its October 24, 2012 decision which revealed a detailed application of the very standard outlined by the Second Circuit in *Hemphill*, and nothing elsewhere in the record that might materially have influenced the court's summary judgment ruling. *See* Dkt. No. 129.

---

[1] It is noted that this order was entered by Hon. H. Kenneth Schroeder, Jr., the United States Magistrate Judge then presiding over the action upon consent of the parties, on October 17, 2012, the day immediately prior to the date of entry of the order transferring the case to the undersigned. Dkt. No. 119. Upon transfer, this court acted promptly due to the long pendency of the motion, the length of time since the close of discovery, and the adequacy of the record regarding Mr. Medina's exhaustion of administrative remedies.

By summary order entered February 13, 2014, the Second Circuit vacated the judgment and remanded the case to this court, relying on (1) the concession of defendants' counsel that summary judgment was granted in their favor before Mr. Medina, proceeding *pro se*, had an opportunity to respond to the motion, and (2) Mr. Medina's agreement that the remand should be limited to pursuit of his claims "that he was deprived of food maliciously, or in retaliation for having filed grievances and this action." *Medina v. Napoli*, 554 F. App'x 65, 66 (2d Cir. 2014). Upon remand, this court granted Mr. Medina's renewed request for counsel, and appointed Nicholas Romano, Esq., from the law firm of Connors & Vilardo, LLP, Buffalo, NY, to represent plaintiff in this case (*see* Dkt. No. 135). On June 26, 2015, Mr. Romano filed on Mr. Medina's behalf a substantive response to defendant's summary judgment motion. Dkt. No. 151.[2]

With regard to the food deprivation and retaliation claims, Mr. Medina states in his supporting declaration on remand that he was transferred to the Special Housing Unit ("SHU") of Southport CF's A-Block on May 17, 2007, arriving in a wheelchair. Dkt. No. 151-2, ¶ 3. He states that he was immediately confronted by Correction Officer ("C.O.") Craig Skelly, and an exchange took place with the result that Mr. Medina was transferred to C-Block and placed behind a plexiglass shield in full mechanical restraints where he remained for 21 days. He further declares that he was placed under a deprivation order, authorized by Deputy Superintendent Paul Chappius, which deprived him of showering privileges, outdoor recreation/exercise, haircuts, and cleaning supplies. *Id.* at ¶¶ 5-10. He states that upon his return to A-Block on June 7, 2007, he was deprived by C.O.s Franklin

---

[2]Upon inquiry, defense counsel has advised the court that no reply brief will be filed.

Zywicki, Larry Gleason, Thomas Hannah, James Gilbert, and other unidentified A-Block personnel of all food and drink for 5½ consecutive days in retaliation for his filing numerous prior grievances and lawsuits. *Id.* at ¶¶ 11-14. He claims that A-Block supervisors Thomas Hannah, Leon McGrain, Daniel Chapman, and Mark Shumaker were aware of this conduct, and either participated in the food deprivation or took no action to correct it. *Id.* at ¶ 15. Mr. Medina further declares that when he was first denied food on June 7, 2007, he immediately complained to the A-Block supervisors, and filed a written grievance in accordance with DOCCS' Inmate Grievance Program ("IGP"). *See id.* at ¶¶ 19, 26, 29. He claims that on June 12, 2007, defendants Skelly and Zywicki came to his cell and informed him that, because he wrote a complaint, he was "never" going to eat, and that C.O. Skelly threatened him with assault. Dkt. No. 151-2, ¶ 30. He also claims that he was again deprived of lunch on December 11 and 22, 2007, in retaliation for commencing this lawsuit. *Id.* at ¶¶ 51, 60.

Upon consideration of the matters set forth in this declaration and the other materials submitted in connection with Mr. Medina's substantive response on remand in light of the record as a whole, and for the reasons that follow, the court adheres to its determination that the complaint must be dismissed in its entirety pursuant to Fed. R. Civ. P. 56(a) because Mr. Medina failed to fully exhaust the administrative inmate grievance procedures available to him under DOCCS regulations prior to bringing suit in federal court for violations of his constitutional rights based on the conduct of prison employees and officials at Southport CF, as required under the PLRA.

## **DISCUSSION**

As explained in this court's prior ruling, under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 …, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the PLRA's "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Smart v. Goord*, 441 F. Supp. 2d 631, 636 (S.D.N.Y. 2006) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Failure to exhaust is an absolute bar to an inmate's action in federal court; section1997e(a) "requires exhaustion of available administrative remedies before inmate-plaintiffs may bring their federal claims to court at all." *Chiarappa v. Meyers*, 2013 WL 6328478, at *4 (W.D.N.Y. Dec. 5, 2013) (*appeal dismissed*, Apr. 10, 2014) (citing *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002)); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (Under PLRA, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory."). Section 1997e(a) also mandates "proper exhaustion," which means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (2006), *quoted in Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009).

In New York, formal exhaustion of administrative remedies for prison inmates requires compliance with a detailed three-step grievance and appeal procedure. *See*

*Morrison v. Parmele*, 892 F. Supp. 2d 485, 487 (W.D.N.Y. 2012) (citing N.Y.C.R.R. § 701.5), *aff'd*, 523 F. App'x 51 (2d Cir. 2013). At the time of the incidents at issue in this action, the grievance process was outlined at 7 N.Y.C.R.R. § 701.7 (now § 701.5), as follows: (1) The inmate must submit a written complaint to the Grievance Clerk within 14 (now 21) calendar days of the alleged occurrence; the Grievance Clerk then submits the complaint to the Inmate Grievance Resolution Committee ("IGRC") for investigation and review; (2) if the IGRC denies the grievance, the inmate may appeal to the superintendent of the facility by filing an appeal with the IGP clerk; (3) after the superintendent issues a decision, the inmate may appeal to the Central Office Review Committee ("CORC"), which makes the final administrative determination. *See Turner v. Goord*, 376 F. Supp. 2d 321, 323 (W.D.N.Y. 2005). Generally, "[a] prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure." *Hairston v. LaMarche*, 2006 WL 2309592, at *7 (S.D.N.Y. Aug. 10, 2006) (citing cases).

Prior to the Supreme Court's admonition in *Woodford* regarding the mandatory nature of the PLRA's "full exhaustion" requirement, the Second Circuit had recognized that an inmate's failure to exhaust administrative remedies may be excused (1) where the remedies are not actually made available to the inmate, *see Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004); (2) where the defendants waive the affirmative defense by failing to raise or preserve it, *see Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004); or (3) where the defendants acted in such a manner that they are estopped from raising it, *see Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004); *see also Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004) (summarizing three-part inquiry established in *Abney*,

*Johnson*, *Ziemba*, and other consolidated cases); *O'Connor v. Featherston*, 2002 WL 818085, at *2 (S.D.N.Y. Apr. 29, 2002) (finding estoppel where circumstances showed inmate made a "reasonable attempt" to exhaust, but alleged corrections officers failed to file his grievances or otherwise impeded or prevented his efforts; citing cases). More recently, the decisions have noted that, in light of *Woodford*, the "estoppel" and "special circumstances" aspects of the *Hemphill* analysis may no longer be applicable. *See Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011) ("We have questioned whether, in light of *Woodford*, the doctrines of estoppel and special circumstances survived." (citing cases)). However, the circuit court conducted a *Hemphill* analysis in *Amador* itself, finding no "special circumstances" to justify estoppel (*see* 655 F.3d at 102–04), and district courts within the Second Circuit have continued to apply the *Hemphill* framework following *Woodford* and *Amador*. *See, e.g., Powell v. Corr. Med. Care, Inc.*, 2014 WL 4229980, at *2 n. 3 (S.D.N.Y. Aug. 15, 2014) (collecting cases); *Stevens v. City of New York*, 2012 WL 4948051, at *6 (S.D.N.Y. Oct. 11, 2012). In any event, it is well settled in New York federal courts that the PLRA requires an inmate to complete <u>all</u> requisite steps of the IGP in order to fully exhaust his administrative remedies; even if he does not receive a response at a particular step in the proceedings, he must proceed in timely fashion to the next step, including the final step of appeal to the CORC. *See, e.g., Smith v. City of New York*, 2013 WL 5434144, at *7 (S.D.N.Y. Sept. 26, 2013); *Salvatierra v. Connolly*, 2010 WL 5480756, at *17 (S.D.N.Y. Sept. 1, 2010) (collecting cases), *report and recommendation adopted*, 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011).

In this case, Mr. Medina contends that the documents attached as exhibits to his supporting declaration submitted on remand establish that he made a reasonable attempt to follow the grievance procedures pertaining to his claim of retaliatory denial of food. First, he complained orally to A-Block supervisors, who investigated the matter to no avail. *See* Dkt. No. 151-2, ¶¶ 19-25; Dkt. No. 151-6. Then, on June 10, 2007, he sent a letter to Southport Superintendent David F. Napoli complaining about food deprivation and requesting transfer out of A-Block (Dkt. No. 151-7). That same day, he also wrote letters to Governor Eliot Spitzer and Senator Charles Schumer complaining about the retaliatory conduct of Southport CF Officers (*See* Dkt. Nos. 151-11, 151-12). On June 11, 2007, he sent a letter to Thomas Eagen, DOCCS' IGP Director, complaining that his grievances were not being processed and requesting that steps be taken to address the problem (Dkt. No. 151-8); on June 12, 2007, he sent a letter to Southport Deputy Superintendent Marilyn Bridge complaining about the retaliatory conduct of Officers Skelly and Zywicki (Dkt. No. 151-9); and on June 14, 2007, he sent a letter to Southport IGP Supervisor Sabrina von Hagn complaining generally that his grievances were not being processed, and specifically that a grievance alleging an assault by C.O. Davis had not been addressed (Dkt. No. 151-10). Ms. von Hagn responded by letter on June 15, 2007, advising Mr. Medina that she had investigated the matter regarding the conduct of C.O. Skelly and was assured by the Floor Officer on A-Block that Mr. Medina was being fed (*see id.*). Mr. Medina contends further that he repeatedly voiced his complaints about retaliatory food deprivation to Southport officials during their rounds and walk-throughs of the facility, but still nothing was done. *See* Dkt. No. 151-2, ¶¶ 35-36.

Finally, on August 29, 2007, Karen Bellamy, who succeeded Mr. Eagen as DOCCS' Director of the IGP, wrote Mr. Medina a letter acknowledging receipt of his June 11, 2007 letter to Mr. Eagen, and advised Mr. Medina to address his specific grievance concerns to the IGP Supervisor, citing IGP policy Directive #4040 as "an orderly, fair, simple and expeditious method of resolving grievances … [with] no provision for an inmate to refer grievances directly to Central Office." Dkt. No. 151-14. Mr. Medina states that he followed Ms. Bellamy's advice and filed another grievance with the Southport IGP supervisors, but received no response. Dkt. No. 151-2, ¶¶ 46-47.

Upon review of these submissions, and drawing all reasonable inferences in favor of Mr. Medina as the party opposing summary judgment, the court finds sufficient evidence to support Mr. Medina's contention that he made a reasonable attempt to present his grievance regarding retaliatory food deprivation to appropriate IGP personnel in a timely manner in June 2007.

By the same token, the evidence of record is insufficient to support a finding that Mr. Medina made a reasonable attempt to fully utilize the grievance resolution procedures available to him–particularly, by appealing to the CORC and awaiting final administrative determination–prior to commencing this action. As discussed, Mr. Medina received correspondence from Ms. von Hagn (the IGP Supervisor at Southport) in June 2007 advising him that his written and oral complaints about retaliatory food deprivation were investigated by IGP, and it was determined that Mr. Medina was receiving his meal; and from Ms. Bellamy (the Director of IGP in the Central Office in Albany) in August 2007 advising him of the proper administrative exhaustion procedures. As confirmed by this court's reading of the PLRA, state regulatory requirements, and controlling legal precedent,

Mr. Medina was under the obligation to appeal to the facility superintendent and/or to the CORC, and to await final determination of his appeal, before bringing this action. It is undisputed that, rather than doing so, he filed this action on July 30, 2007.

This was the very basis for this court's prior determination on summary judgment (and upon reconsideration) that the record was devoid of evidence to support a reasonable inference that Mr. Medina fully pursued all three steps of the state's prison grievance procedure with respect to his claims of food deprivation and retaliation at Southport CF. *See Medina*, 2012 WL 5288713, at *5. The court found the matters set forth in the declarations of Ms. Bellamy (Dkt. No. 95), as IGP Director and custodian of the records maintained by CORC, and defendant Nancy Schoonover, as IGP Grievance Supervisor and custodian of inmate grievance records at Southport (Dkt. No. 23), sufficient to establish as an affirmative defense that Mr. Medina failed to seek review and final administrative determination by CORC as to any grievance with respect to the allegations in the complaint relating to his claims of unconstitutional deprivation of meals at Southport or retaliation by prison employees prior to the commencement of this action in July 2007. *Id.* at *5-*6. Upon review of the submissions on remand, the court finds nothing to compel a different ruling, notwithstanding exemplary representation by *pro bono* counsel and ample opportunity to supplement the record.[3] As indicated above, the courts have not hesitated to grant summary judgment dismissing inmates' § 1983 complaints under the PLRA's mandatory exhaustion requirement where the evidence contains no record of

---

[3] The record is similarly devoid of any showing that Mr. Medina fully exhausted available grievance procedures regarding his claim that he was deprived of lunch in December 2007 in retaliation for commencing this lawsuit.

appeal to the CORC. *See, e.g., Salvatierra*, 2010 WL 5480756, at *17 (Superintendent's failure to render timely decision regarding the plaintiff's grievance did not exempt plaintiff from PLRA's exhaustion requirements, including filing an appeal with CORC); *Torres v. Carry*, 691 F. Supp. 2d 366, 371 (S.D.N.Y. 2009) (no record of final determination from CORC at the time complaint was filed); *Partee v. Grood*, 2007 WL 2164529, at *3 (S.D.N.Y. July 25, 2007) ("[A]n inmate/plaintiff's claim is not exhausted until he appeals to the CORC and receives a final decision regarding his grievance."); *Arce v. Keane*, 2004 WL 439428, at *2 (S.D.N.Y. Mar. 9, 2004) ("An inmate's failure to appeal a grievance is not excused because he has received no response to his initial grievance."); *Hernandez v. Coffey*, 2003 WL 22241431, at *4 (S.D.N.Y. Sept. 29, 2003) ("where a prisoner files a grievance, and the IGRC does not respond, the inmate must nevertheless exhaust his appeals to the facility superintendent and the CORC").

The record on remand is also devoid of any indication that the appellate grievance procedures were not actually available to Mr. Medina, that any of the defendants impeded or prevented his efforts to file an administrative appeal, or that any other special circumstances might exist to excuse noncompliance with the PLRA's mandatory full exhaustion requirement. In the absence of any judicially-recognized justification for Mr. Medina's failure to fully pursue his administrative remedies, and because those remedies are no longer available with respect to the matters complained of, "dismissal with prejudice … is required." *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004).

## **CONCLUSION**

For the foregoing reasons, defendants' summary judgment motion (Dkt. No. 93) is granted, and the case is dismissed. The Clerk of the Court is directed to enter judgment in favor of defendants.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So ordered.

    \s\ John T.Curtin
    JOHN T. CURTIN
    United States District Judge

Dated: September 23, 2015
p:\pending\2007\07-497.sj2.sept17.2015