UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANTHONY MEDINA,

                           Plaintiff,            07-CV-0497W(Sr)

v.

DAVID F. NAPOLI,
MARILYN BRIDGE,
THOMAS HANNAH,
JODI A. LITWILER,
LEON D. MCGRAIN,
NANCY SCHOONOVER,
CRAIG SKELLY,
FRANKLIN ZYWICKI,
JAMES GILBERT, and
LARRY GLEASON,

                           Defendants.

## DECISION AND ORDER

This case was referred to the undersigned by the Hon. Elizabeth A. Wolford, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters. Dkt. #180.

BACKGROUND

Plaintiff's amended complaint alleges that upon his transfer to A-Block in the Special Housing Unit ("SHU"), at Southport Correctional Facility ("Southport"), on May 17, 2007, Corrections Officer ("CO"), Skelly filed a disciplinary report falsely accusing plaintiff of threats, resulting in plaintiff's transfer to C-Block, where he was placed under a deprivation order stripping plaintiff of showering privileges, outdoor recreation, haircuts and cleaning supplies, for 21 days. Dkt. #181, ¶¶ 18-20. During his

confinement in C-Block, plaintiff made numerous complaints about his treatment by corrections officers, housing conditions and medical treatment. Dkt. #181, ¶ 20. On May 23, 2007, plaintiff filed a grievance alleging retaliation by staff. Dkt. #181, ¶ 20.

Upon plaintiff's return to A-Block on June 7, 2007 and through June 12, 2007, plaintiff alleges that he was denied all food, including breakfast, lunch and dinner, by CO Skelly, CO Zywicki, CO Gleason, Sergeant Hannah and CO Gilbert. Dkt. #181, ¶¶ 22-23. Plaintiff alleges the he lodged verbal and written grievances, through the Inmate Grievance Program ("IGP"), internal mail, and with Southport Superintendent Napoli, Deputy Superintendent Bridge, Sergeant Hannah, Sergeant McGrain, Sergeant Litwiler and IGP Supervisor Schoonover, but received no response. Dkt. #181, ¶¶ 25 & 28-35.

Plaintiff commenced this action, *pro se*, on July 30, 2007, along with other inmates alleging, *inter alia*, denial of meals and harassment in A-Block during this general time frame. Dkt. #1.

On December 11, 2007, CO Gilbert received notice from the U.S. Marshals Service of plaintiff's lawsuit with respect to the deprivation of food in June of 2007. Dkt. #181, ¶ 50. That same day, CO Gilbert referenced the lawsuit as he denied plaintiff his lunch. Dkt. #181, ¶ 51.

By Decision and Order entered September 24, 2015, the Hon. John T. Curtin granted defendants motion for summary judgment on the ground that plaintiff

failed to exhaust all available administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"). Dkt. #152. By Summary Order issued February 28, 2018, the Court of Appeals for the Second Circuit vacated the judgment and remanded the matter further consideration of whether plaintiff exhausted his administrative remedies as to his June and December 2007 food deprivation claims against the defendants set forth above. Dkt. #161.

Plaintiff proceeds pursuant to 42 U.S.C. § 1983, alleging violation of the Eighth Amendment's prohibition against cruel and unusual punishment as well as deliberate indifference to plaintiff's need for sustenance; violation of the Fourteenth Amendment's right to substantive due process; and retaliation for exercising his First Amendment right to file grievances. Dkt. #181. Although plaintiff filed his original complaint *pro se*, he is currently represented by *pro bono* counsel.

DISCUSSION AND ANALYSIS

Currently before the Court is plaintiff's motion to compel discovery and to sanction defendants for spoliation of evidence. Dkt. #185. Plaintiff argues that there is no excuse for defendants' failure to preserve evidence given that plaintiff filed this action within one month of the underlying incident. Dkt. #185-1, p.9. Counsel for plaintiff declares that during a teleconference regarding outstanding discovery, defense counsel informed her that "no litigation hold for this matter could be located," suggesting that defendants failed to take reasonable steps to preserve documents. Dkt. #185-1, p.9 & Dkt. #186-1, ¶ 3.

Defendants argue that they had no control over the documents at issue, which were in DOCCS custody. Dkt. #193, pp.11-13. Moreover, defendants argue that there is no evidence that defendants or DOCCS acted negligently with respect to the documents sought or that the evidence plaintiff seeks would be favorable to his case. Dkt. #193, p.15.

> Rule 26(b)(1) of the Federal Rules of Civil Procedure provides:
>
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The rule is broadly interpreted to permit discovery of relevant evidence regardless of the potential that such evidence will be admissible at trial. *Cox v. McClellan*, 174 F.R.D. 32, 34 (W.D.N.Y. 1997). In determining proportionality, courts balance the value of discovery requested against the cost of production. *Woodward v. Afify*, 14-CV-856, 2017 WL 279555, at *2 (W.D.N.Y. Jan. 23, 2017). "Courts have wide discretion to manage discovery." *Id.* at *1.

Pursuant to Rule 34(a), a party may serve on any other party a request to produce documents which are in the possession, custody or control of the party upon whom the request is served. Even where a party lacks actual physical possession or custody of requested documents, such party may nevertheless be found to have control

of the documents if the party is legally entitled to the documents or has the practical ability to obtain the documents from a third-party. *Gross v. Lunduski*, 304 F.R.D. 136, 142 (W.D.N.Y. 2014). Courts in this district have held that the relationship between NYSDOCCS and its employees is sufficiently closely coordinated to find that NYSDOCCS employees have control over evidence held by NYSDOCCS. *Wilson v. Hauck*, 141 F.Supp.3d 226, 229 (W.D.N.Y. 2015); *See Gross*, 304 F.R.D. at 143 (corrections officer had practical ability to acquire documents in NYSDOCCS possession given NYSDOCCS substantial interest in the outcome of civil rights actions against its employees).

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *Richard v. Dignean*, 332 F.R.D. 450, 466 (W.D.N.Y. 2019), *quoting West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). When presented with a spoliation issue, "courts consider whether the party accused of the spoliation or destruction had a duty to preserve requested documents, whether the party acted willfully, negligently or in bad faith, and the degree of prejudice inflicted upon the party seeking the discovery as a result of the spoliative conduct at issue." *Id.* at 466-67 (internal quotation omitted). The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation. *Id.* at 467. The party seeking sanctions for spoliation must demonstrate that the evidence is more than simply responsive to discovery demands; the party must demonstrate that evidence

would have been helpful in proving its claims or defenses, *i.e*., that the absence of such evidence causes prejudice. *Pizella v. Liberty Gas Station & Convenience Store, LLC*, 410 F. Supp.3d 425, 433 (N.D.N.Y. 2019). Trial judges have wide discretion to impose sanctions for spoliation, including preclusion, monetary sanctions or adverse inference instructions, even in cases which do not rise to the level of outrageous culpability. *Richard,* 332 F.R.D. at 467. The goals for imposing such sanctions include deterring parties from engaging in spoliation; placing the risk of erroneous judgment on the party that created that risk; and restoring the prejudiced party to the same position he would have been absent the destruction of evidence by the opposing party. *Pizella,* 410 F. Supp.3d at 434-435.

**Log Books**

Plaintiff seeks staffing records to identify where defendants were stationed at Southport at the time of the incidents alleged in the complaint. Dkt. #185-1, p.5. Plaintiff asserts that such records are necessary because defendants deny any recollection of plaintiff and/or claim they were not present in the areas of the prison where the incidents took place. Dkt. #185-1, p.5. Plaintiff seeks the Log Book or Sign In/Sign Out Log and the Unit Activity Log from May through December of 2007 to piece together information on defendants assignments at Southport. Dkt. #185-1, p.6. Given that all staffing records reflecting shifts, work schedule and block assignments were destroyed (Dkt. #186-3, p.7), plaintiff also seeks an adverse inference that defendants were all working or present in the locations that he asserts within his complaint. Dkt. #185-1, p.15

Defendants respond that because assignment sheets and/or staff bid sheets do not reflect when and where a particular person actually worked on any given day, NYSDOCCS had no basis to deviate from their standard retention policy to destroy the documents prior to such records being requested by plaintiff. Dkt. #193, p.3. Defendants have produced the Sign In/Out Log and Unit Activity Log for A-Block from May through December of 2007, which they assert does track activity of specific housing blocks, but object to providing this information for the other Blocks as the alleged constitutional violations occurred in A-Block. Dkt. #193, pp.3 & 18.

In reply, plaintiff asserts that the C-Block records are relevant because the grievances he filed there caused defendants to retaliate against him upon his return to A-Block and that he was housed in B-Block when he was denied lunch in December of 2007. Dkt. #194, p.6.

The Court agrees that these records are relevant, but determines that the time frame is overbroad. Defendants shall produce the Sign In/Out Log and Unit Activity Log for C-Block for May and June of 2007 and for B-Block for December of 2007. As these documents should provide plaintiff with the information sought by plaintiff, *to wit*, who signed in and out of a given housing block during the time frame, the request for sanctions is moot.

**Electronic Communications**

Plaintiff seeks electronic records and communications between Southport personnel and/or any third party regarding plaintiff in order to obtain any records

relevant to plaintiff's complaints about food deprivation, retaliation and his attempts to file grievances. Dkt. #185-1, p.6. Plaintiff claims that no such records have been produced and that defendants have not indicated that any attempt has been made to locate such records. Dkt. #185-1, p.6. Plaintiff requests that the Court compel defendants to produce any such electronic communications and, if no such documents exist, to explain the search process undertaken. Dkt. #185-1, p.7.

Defendants respond that a search of the New York State Department of Corrections and Community Supervision's (NYSDOCCS'), email system was conducted and no relevant documents were located. Dkt. #193, p.4. More specifically, an Assistant Counsel for NYSDOCCS declares he conducted a search of the electronic communication system of NYSDOCCS using the terms and connectors provided by plaintiff for each defendant other than Southport Superintendent Napoli, who left NYSDOCCS employment in 2009 and Deputy Superintendent Bridge, who left NYSDOCCS employment in 2008, because their email addresses are no longer in the system due to the length of time that has passed since they left NYSDOCCS employment. Dkt. #193-2.

Plaintiff replies that defendants failed to explain the preservation process put in place to ensure that electronic communications would be preserved for the duration of this litigation, noting that defendants advised plaintiff that a litigation hold was not put in place for this action. Dkt. #194, pp.6-7. Plaintiff seeks sanctions for defendants' failure to preserve electronic communications concerning plaintiff. Dtk. #194, pp.6-7.

The Court accepts defendants' declaration that no electronic communications were discovered following a search for electronic communications to and/or from all of the defendants except Southport Superintendent Napoli and Deputy Superintendent Bridge. As to those defendants, plaintiff has failed to demonstrate that the absence of any such communications is prejudicial to plaintiff's ability to prove his claims.

**Personnel Records - Defendants' Prior Misconduct**

Plaintiff seeks the personnel file, as well as other information related to prior misconduct by defendants at Southport. Dkt. #185-1, p.7. Plaintiff argues that prior misconduct is relevant to demonstrate motive, opportunity, intent, plan, knowledge, and absence of mistake for the alleged constitutional violations and to show evidence of defendants' character. Dkt. #185-1, pp.7-8.

Defendants respond that a review of defendants' personnel files revealed no information relating to issues of food deprivation and retaliation for filing grievances. Dkt. #193, p.6. More specifically, the Assistant Attorney General assigned to this case declares that defendants' personnel files have been reviewed and do not reveal any disciplinary documentation relating to allegations of food deprivation or retaliation. Dkt. #193-3, ¶ 33.

Plaintiff replies that he should be able to review the files and not be required to rely on defendants' statements. Dkt. #194, p.8.

The Court accepts defendants' declaration that defendants' personnel records do not reveal evidence of prior allegations of retaliation or food deprivation and determines that there is no basis to expand the scope of review of defendants' personnel records. *See Crenshaw v. Herbert*, 409 Fed. App'x 428 (2d Cir. 2011) ("The district court properly relied on defense counsel's affirmation that [defendant's personnel] file contained no relevant disciplinary records.").

**Inmate Grievances**

Plaintiff seeks grievances filed by any inmate at Southport alleging food deprivation, retaliation and obstruction of the inmate grievance process against any defendant so as to demonstrate a pattern of behavior; corroborate plaintiff's allegations and demonstrate motive and opportunity for defendants to deny inmates food and retaliate against them. Dkt. #185-1, p.8.

Defendants respond that plaintiff's request is burdensome because grievances are not filed by employee name, and are not stored electronically, requiring every grievance to be reviewed manually. Dkt. #185-1, pp.8-9; Dkt. #186-3, pp.9-10 & Dkt. #193-1, ¶¶ 4-5 & 7. Defendants further respond that any grievances during the relevant time frame have been destroyed pursuant to NYSDOCCS' retention policies. Dkt. #185-1, p.9 & Dkt. #186-3, pp.9-10. Defendants argue that sanctions are not appropriate for such destruction because plaintiff has failed to produce evidence to suggest that grievances from other inmates regarding food deprivation existed and supported his claims. Dkt. #193, p.18.

Plaintiff notes that these documents were requested within a year of the filing of this action, providing defendants with sufficient notice of this discovery request. Dkt. #185-1, p.8. Plaintiff seeks sanctions for defendants' failure to preserve these documents. Dkt. #185-1, p.15.

"Prior complaints or grievances against a defendant may be discoverable if they involve similar conduct to that alleged in the lawsuit." *Woodward*, 2017 WL 279555, at *4. Moreover, such grievances would clearly be relevant to suggest a policy or practice of withholding meals in retaliation for actual or perceived misbehavior. However, the Court notes that defendants have produced a number of grievances alleging denial of meals from inmates who were originally plaintiffs in this action. Dkt. #26. Without opining as to their admissibility, these grievances would be sufficient to corroborate plaintiff's allegations and demonstrate a pattern of behavior. As to obstruction of the inmate grievance process, the Court defers consideration of plaintiff's request for an adverse inference until such time, if any, that the existence of grievances alleging obstruction of the inmate grievance process by other inmates could be used by plaintiff to advance his claim.

**Plaintiff's Grievances**

Plaintiff argues that records relating to the grievances and communications he filed at Southport are relevant to his claim that he was denied meals in retaliation for filing such grievances. Dkt. #185-1, p.10. Specifically, plaintiff seeks all grievances and communications filed by plaintiff; any IGRC files and records;

and any communications from NYSDOCCS' personnel. Dkt. #185-1, p.10. Plaintiff argues that these documents should have been preserved. Dkt. #185-1, pp.11-12. As a consequence for the destruction of this evidence, plaintiff seeks to bar defendants from arguing that the plaintiff did not file grievances, and a determination that the grievances destroyed would have collaborated plaintiff's claims. Dkt. #185-1, p.12.

Defendants respond that they were not asked to produce the underlying documents and communications until years after they were destroyed in the ordinary course of business pursuant to NYSDOCCS' retention policies and that there was no basis to believe that every grievance filed by plaintiff should be preserved for this litigation. Dkt. #185-1, p.10; Dkt. #186-3, p.8 & Dkt. #193, p.14.

Grievances and communications related to the claims in this action were produced as Rule 26 discovery. Dkt. #19-2, Dkt. #26 & Dkt. #27. In response to plaintiff's initial demand, defendants provided a list of grievances filed by plaintiff during his incarceration at Southport. Dkt. #67. Defendants produced such an index. Dkt. #19-2, pp.23-24. It was not until 2018 that plaintiff sought the underlying grievances. Dkt. #193-3, p.15.

The Court agrees that defendants were under no obligation to preserve the underlying grievances filed by plaintiff during the entirety of his incarceration at Southport as a result of the filing of this litigation. Moreover, while the fact that plaintiff filed numerous grievances may support his claim that defendants retaliated against him

because he filed so many grievances, plaintiff has failed to demonstrate that the underlying substance of such grievances is relevant. Accordingly, plaintiff's request for an adverse inference is denied.

### Southport Manuals and Policies

Plaintiff sought procedures, rules or guidelines relating to serving meals, grievances, transfers, disciplinary measures and document retention. Dkt. #185-1, p.12. Counsel for plaintiff declares that during a teleconference regarding outstanding discovery, defense counsel informed her that the relevant Southport Facilities and Operation Manual was destroyed. Dkt. #186-1, ¶ 3. Plaintiff notes that these manuals were requested within a year of the filing of this action, providing defendants with sufficient notice of their demand. Dkt. #185-1, p.13. Plaintiff seeks an inference that the policy manual would demonstrate that defendants' actions in denying plaintiff meals and carrying out their obligations under the grievance program were inconsistent with existing policies. Dkt. #185-1, p.13.

Defendants respond that the Southport Facilities and Operation Manual establishes guidelines for meal preparation and delivery to housing blocks, as well as kitchen staffing and operations and is not, therefore, relevant to any element of plaintiff's claim. Dkt. #193, p.16. Moreover, defendants respond that deposition testimony has established that, in 2007, kitchen staff had no involvement in delivery of meals to individual inmates and there was no requirement to track the service of meals to individual inmates. Dkt. #193, p.17.

As plaintiff has failed to demonstrate that the destruction of the Southport Facilities and Operations Manual deprives him of evidence which he could not otherwise obtain regarding NYSDOCCS policies governing inmate meals and the grievance process, plaintiff's request for an adverse inference is denied.

**Inmate File**

Plaintiff sought his inmate file from Southport, which includes, *inter alia,* disciplinary orders and dispositions and medical accommodations. Dkt. #185-1, p.13. Plaintiff seeks an adverse inference that the file would support plaintiff's need for medical accommodations at Southport and corroborate his claims about deprivation orders he was subjected to at Southport. Dkt. #185-1, p.13.

Defendants respond that disciplinary orders and medical accommodations are not relevant to the claims remaining in this action, *to wit*, denial of food and retaliation. Dkt. #193, p.17.

The Court finds that defendants should have been on notice of the need to preserve plaintiff's inmate file upon the filing of plaintiff's lawsuit alleging retaliation. However, the Court defers consideration of plaintiff's request for an adverse inference until such time, if any, that the existence of information contained within plaintiff's inmate file is unavailable from other sources and could be used by plaintiff to advance his claim.

**Audio Tapes of Disciplinary Hearings**

Plaintiff seeks an inference that audio recordings of plaintiff's disciplinary hearing would corroborate his claim that the disciplinary charge against him was false and that defendants Skelly and Bridge fabricated their misbehavior report. Dkt. #185-1, p.14.

Defendants argue that plaintiff has failed to demonstrate that the audio tapes would corroborate his allegation that the disciplinary charge against him was false. Dkt. #193, p.17.

As plaintiff's complaint does not set forth a denial of due process claim with respect to his disciplinary hearing on the misbehavior report, there was no basis for defendants to have preserved such evidence. Accordingly, plaintiff's request for an adverse inference is denied.

**SO ORDERED.**

DATED: Buffalo, New York
January 31, 2020

                                    *s/ H. Kenneth Schroeder, Jr.*
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**